# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALAN W. ANDERSON and | § | |
| KELLY ANDERSON | § | |
| | § | |
| V. | § | CASE NO. 4:10-CV-398 |
| | § | Judge Mazzant |
| CITIMORTGAGE, INC., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. #27). The Court, having considered the relevant pleadings, finds that Defendants' Motion to Dismiss should be granted.

## BACKGROUND

Plaintiffs Alan W. Anderson and Kelly Anderson, pro se, filed this lawsuit on July 23, 2010, in state court against CitiMortgage, Inc. and Mortgage Electronic Registration Systems, Inc. ("MERS"). On August 6, 2010, Defendants removed this action to this Court. On January 24, 2011, Plaintiffs filed a First Amended Complaint (Dkt. #26).

On or about August 26, 2005, Alan Anderson negotiated a loan to purchase real property whereupon he signed a Promissory Note (the "Note") payable to W.R. Starkey Mortgage, LLP. The Deed of Trust for the transaction was recorded on September 2, 2005, for the property located at 411 Oak Brook Drive, Lucas, Texas 75002 (the "Property"). The Deed of Trust names MERS as the "nominee" for Lender and the Lender's successors and assigns. MERS is also named as mortgagee on the Deed of Trust. The Note does not mention MERS.

On June 23, 2010, an Assignment of Mortgage was prepared by a document processing company named Orion Financial Group and signed by a MERS representative in an attempt to

transfer/assign the Deed of Trust and Note to CitiMortgage. Plaintiffs assert that CitiMortgage directed and colluded with the document processing company and the purported MERS representative to fraudulently assign the Deed of Trust and Note to it. The Assignment was filed with the Collin County Clerk's Office on June 29, 2010. Plaintiffs assert that they were never notified of the assignment to CitiMortgage and only became aware of the assignment by accident though their own county records search.

Plaintiffs assert that Defendants knew that they filed false and fraudulent documents with the county clerk to attempt to wrongfully foreclose on the Property. Plaintiffs assert that CitiMortgage has no legal standing to direct and file a foreclosure and, without that standing, committed fraud. Plaintiffs also allege that W.R. Starkey Mortgage, LLP, who claimed to be the original lender, was not the actual or real lender/creditor but a pretender lender that in reality only received a fee and/or commission payment for marketing home loans.

Plaintiffs assert claims for fraudulent concealment, mail/wire fraud under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(c), 18 U.S.C. §§ 1341, 1343, violations of the Real Estate Settlement Procedures Act, ("RESPA") 12 U.S.C. § 2605 et seq., violations of the Fair Debt Collection Practices Act ("FDCPA"), unjust enrichment, declaratory relief, and injunctive relief. A good explanation of MERS and Texas law can be found in *Richardson v. CitiMortgage, Inc.*, Civil Action No. 6:10cv119, 2010 WL 4818556 *5 (E.D. Tex. Nov. 22, 2010).[1]

---

[1] U.S. Magistrate Judge Judith K. Guthrie explained as follows:

Under Texas law, where a deed of trust, as here, expressly provides for MERS to have the power of sale, then MERS has the power of sale. *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App.-Eastland 2010). MERS was the nominee for Southside Bank and its successors and assigns. MERS had the authority to transfer the rights and interests in the Deed of Trust to CitiMortgage. The Plaintiffs' complaints about the role of MERS in this matter lack merit.

On February 7, 2011, Defendants filed their motion to dismiss (Dkt. #27). On March 7, 2011, Plaintiffs filed a response (Dkt. #30). On March 17, 2011, Defendants filed a reply (Dkt. #33).

**LEGAL STANDARD**

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes certain defenses to be presented via pretrial motions. A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6)

---

It is further noted that the role of MERS has been the subject of federal multidistrict litigation in *In re: Mortgage Electronic Registration Systems (MERS) Litigation*, 659 F. Supp.2d 1368 (U.S. Jud. Pan. Mult. Lit. 2009). The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans. *Id*. at 1370. The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale. *Id.* at 1370 n. 6. MERS is defined in Texas Property Code § 51.0001(1) as a "book entry system," which means a "national book system for registering a beneficial interest in security instrument and its successors and assigns." As noted in *Athey*, mortgage documents provide for the use of MERS and the provisions are enforceable to the extent provided by the terms of the documents. The role of MERS in this case was consistent with the Note and Deed of Trust.

3

motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez*, 577 F.3d at 603 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Id*.

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1951. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 469 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). When ruling on a motion to dismiss a *pro se* complaint, however, a district court is "required to look

4

beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983); *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) (finding that because of plaintiff's *pro se* status, "precedent compels us to examine all of his complaint, including the attachments"); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Furthermore, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Scanlan*, 343 F.3d at 536.

## DISCUSSION AND ANALYSIS

Defendants assert that Plaintiffs' Amended Complaint should be dismissed as Plaintiffs only assert conclusions without any factual support.

**RICO and Mail/Wire Fraud**

Defendants first move to dismiss Plaintiffs' claim for RICO mail and wire fraud. A plaintiff bringing a claim under the RICO statute must show at least the three following elements: (1) a person who engages in (2) a pattern of racketeering activity, and (3) connected to the acquisition, establishment, conduct, or control of an enterprise. 18 U.S.C. § 1962; *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. *Id.* An enterprise under RICO is a group of persons or entities associating together for the common purpose of engaging in a course of conduct, and an enterprise may be a legal entity or any union or group of individuals **associated in fact**. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citing 18 U.S.C. § 1961(4)) (emphasis added). The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it

5

engages. *Whelan*, 319 F.3d at 229 (citing 18 U.S.C. § 1961(4)). Plaintiff pleaded acts which could serve as "predicate acts"-mail fraud and wire fraud. 18 U.S.C. § 1961(1). The elements of RICO mail fraud are: (1) a scheme to defraud by means of false or fraudulent representation; (2) interstate or intrastate use of the mails to execute the scheme; (3) the use of the mails by the defendant connected with scheme; and (4) actual injury to the plaintiffs. *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993).

The allegations in this case are that Defendants fraudulently assigned the Deed of Trust and Note to CitiMortgage in order to foreclose on the Property. Even if the Court assumed that this act was a predicate act of RICO mail/wire fraud, there are no allegations establishing at least two predicate acts, or any allegations showing any continuous threat of racketeering activity by Defendants. A review of the Amended Complaint illustrates that Plaintiffs have failed to allege a predicate act of racketeering activity. There are also no allegations of any fraudulent representations or omissions of material facts suggesting a scheme or artifice to defraud, nor allegations of how interstate or intrastate use of the mails/wires furthered any such scheme. Defendants point out that Plaintiffs do not dispute that they are still in possession of the Property and that the loan they received to purchase the Property represents a legitimate debt.

Plaintiffs respond that they are making no claims under RICO but instead are asserting a common law fraud and a mail/wire fraud claim. However, federal causes of action for wire and mail fraud are not civil in nature. *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634 (5th Cir. 1974) (wire fraud statute did not operate to create federal cause of action for damages against defendants who were alleged to have violated the Act); *Bell v. Health-Mor, Inc.,* 549 F.2d 342, 346 (5th Cir. 1977) (finding no implied private remedy under mail fraud statute); *Moreno v.*

*Curry*, No. 4:06-cv-238, 2006 WL 3207984, 2 (N.D. Tex. 2006) (no private right of action); *see also Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir.1999) ("we agree with the Fifth and Sixth Circuits and hold that Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes."). To the extent that Plaintiffs assert claims under 18 U.S.C. §§ 1341 and 1343, these claims for mail and wire fraud should be dismissed because there is no private right of action. Although Plaintiffs now indicate that they are not asserting a RICO claim, the Court finds that the allegations for mail and wire fraud under RICO are not sufficient and are merely conclusory allegations of mail/wire fraud which fail to allege sufficient facts to state a RICO action.

In their response, Plaintiffs argue that they are asserting a claim for common law fraud. Defendants move to dismiss this claim asserting Plaintiffs fail to plead this claim as required by Federal Rule of Civil Procedure 9. The Court agrees.

Under Texas law, the elements of common law fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Plaintiffs respond that a more relaxed pleading requirement should apply and not the requirements of Rule 9.

Plaintiffs' amended complaint does not state a plausible claim for common law fraud. To adequately state a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Pro. 9(b). "Put simply, Rule 9(b) requires 'the who,

7

what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.2003). Plaintiffs' current complaint does not set forth such facts that would meet the Rule 9(b) standard. Plaintiffs' personal beliefs do not support a claim for fraud. Plaintiffs do not identity any misrepresentations made by Defendants to Plaintiffs. Plaintiffs fail to allege any facts to support the conclusion that the fraud is the June 23, 2010 assignment of the Deed of Trust from MERS to CitiMortgage.

**RESPA**

Plaintiffs next assert a claim for violations of RESPA. Plaintiffs allege that they sent two "qualified written requests" to CitiMortgage and that CitiMortgage "failed to answer any of the questions contained within the QWR" in violation of Section 2605(e) of RESPA.

RESPA requires a "loan servicer" to timely respond to a QWR from a borrower. 12 U.S.C. § 2605(e). A loan servicer is "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). Loan servicing means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan...and making the payments of principle and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). A QWR is a correspondence that adequately identifies the borrower and provides reasons for the borrower's belief "that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Within 60 days of receiving a QWR, a loan servicer must (a) make appropriate corrections in borrower's account; (b) provide the borrower with a written explanation of why the account is correct and who the borrower may contact for further assistance; or (c) provide the borrower with the information requested, or a written explanation of why the information is

unavailable or cannot be obtained by the servicer and who the borrower may contact for further assistance. 12 U.S.C. § 2605(e)(2)(A)-(C).

Plaintiffs do not allege facts sufficient to establish they sent a QWR to CitiMortgage. Plaintiffs do not attach their writings to the complaint or otherwise set forth the alleged contents of those writings. A QWR is a vehicle by which a customer can request information about the servicing of a loan. Plaintiffs provide no allegations in the amended complaint of what specific questions were asked by Plaintiffs, what specific responses were provided by CitiMortgage, what specific violations of RESPA occurred, and what damages resulted from the violations. Therefore, this claim should be dismissed.

**FDCPA**

Plaintiffs next allege that CitiMortgage violated unspecified provision of the FDCPA because its foreclosure counsel attempted to foreclose on the Property even though Plaintiffs allegedly sent a letter to foreclosure counsel disputing the debt.

Defendants move to dismiss, asserting that foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the meaning of FDCPA. The Court agrees. *See Williams v. Countrywide Home Loans, Inc.* 504 F. Supp.2d 176, 190 (S.D. Tex. 2007); *Breedlove v. Wells Fargo Bank, N.A.*, No. CV-09-8135, 2010 WL 3000012 *3 (D. Ariz., July 28, 2010).

The FDCPA does not apply to CitiMortgage since CitiMortgage was not a "debt collector" under the Act, but rather was an original creditor on the Note and Deed of Trust relative to the property in question and continued to service the debt. *See Schosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 539 (7th Cir. 2003); *Reagan v. Tolleson Private Bank*, 3:08-cv-354-M, 2008 WL 3171194, *1 (N.D. Tex. July 28, 2008). Therefore, Plaintiffs' claim for violation of the FDCPA should be

dismissed.

Plaintiffs respond that Defendants' counsel was attempting to collect a debt. Defendants assert that foreclosure counsel pursuing a non-judicial foreclosure are not per se debt collectors and that Plaintiffs must allege facts establishing all the characteristics of a "debt collector" as defined by the FDCPA. The Court agrees. *See Brown v. Morris*, 243 F. App'x. 31, 35 (5th Cir. 2007).

**Unjust Enrichment**

Plaintiffs next assert a claim for unjust enrichment, asserting that the mortgage contract was procured by fraud and therefore is void or voidable. Plaintiffs also allege that there is no contract between Plaintiffs and Defendants.

In Texas, a plaintiff may recover under an unjust enrichment theory where a person has "obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment is a quasi-contractual claim that is based on the absence of an express agreement. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *First Union Nat'l Bank v. Richmont Cap. Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App.-Dallas 2005, no pet.). "Generally, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory because parties should be bound by their express agreements." *Id.* (citing *Fortune*, 52 S.W.3d at 683). Moreover, whether a plaintiff has a meritorious claim for breach of contract does not govern whether that remedy precludes a claim for unjust enrichment; rather, "the mere existence of potential contract claim bars the unjust enrichment remedy." *In re Myles*, 395 B.R. 599, 605 (Bkrtcy. M.D.La. 2008). In this case there is a Deed of Trust and a Note. Plaintiffs' obligations are covered by these loan documents which would preclude a claim for unjust

10

enrichment.

Because Plaintiffs' allegations are governed by the loan agreements between Plaintiffs and Defendants at issue in this case, their unjust enrichment claims must be dismissed. *See Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004) (holding that farmers failed to state claim for unjust enrichment under Arkansas law against bank and agri-business, where farmers had a written contract with bank and agri-business for property and for poultry production businesses); *In re Myles*, 395 B.R. 599 at 605 (dismissing plaintiffs' unjust enrichment claim that defendant improperly handled plaintiffs' mortgage payments where claim was covered by the plaintiffs' breach of contract claims). Accordingly, Defendants' Motion to Dismiss should be granted with regard to Plaintiffs' unjust enrichment claim.

Defendants further assert that Plaintiffs have failed to properly plead a claim for unjust enrichment. The Court agrees. Plaintiffs have failed to allege a plausible claim for unjust enrichment which requires Plaintiffs to plead that the Defendants obtained a benefit from them by fraud, duress or the taking of an undue advantage. Therefore, this claim should be dismissed.

**Declaratory and Injunctive Relief**

Plaintiffs also seek declaratory and injunctive relief, asserting that a controversy exists regarding the issue of who is the true owner of the Note. Defendants assert that Plaintiffs have failed to allege facts showing that there is a dispute about the ownership of the Note or even that technical ownership of the Note is necessary to enforce the Note.

The Declaratory Judgment Act is a procedural device that creates no substantive rights and requires the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984). Thus, the act

provides no relief unless there is a justiciable controversy between the parties. The Fifth Circuit stated as follows:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.
> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgments.

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations and quotations omitted). As Plaintiffs have alleged no facts that would lead to the conclusion that a present controversy exists between them and Defendants, Plaintiffs do not have a right to relief under the Declaratory Judgment Act.

A review of the amended complaint illustrates no factual allegations that would support a theory that Defendants are not the proper holders of the Note and Deed of Trust. Conclusions are not sufficient to present a controversy between the parties.

Similarly, to assert a request for injunctive relief, Plaintiffs are required to show "a substantial likelihood of success on the merits." *DSC Comm. Corp. v. DGI Techs, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996). As all of Plaintiffs' causes of action should be dismissed, and Plaintiffs have failed to allege sufficient facts to support their claims, Plaintiffs are not entitled to injunctive relief.

It is therefore ORDERED that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. #27) is hereby GRANTED and Plaintiffs' claims are DISMISSED with prejudice.

**SIGNED this 23rd day of March, 2011.**

12

AMOS L. MAZZANT